UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

W.H.P.M., INC.

        Plaintiff,

v.

IMMUNOSTICS, INC.,

        Defendant.

Case No. 3:18-cv-16031-BRM-TJB

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Immunostics, Inc. ("Immunostics") Motion to Dismiss Plaintiff W.H.P.M., Inc. ("WHPM") Amended Complaint for failure to state a claim, and because the claims are time barred by the applicable statute of limitations. (ECF No. 18-1.) WHPM opposes the Motion. (ECF No. 25.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Immunostics' Motion to Dismiss is **GRANTED in part and DENIED in part.**

    **I.    BACKGROUND**

For the purposes of deciding Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

WHPM is a California corporation with its principal place of business in Irwindale, California and is in the business of "manufacturing, distributing, and selling medical devices to health care professionals that are used to test for blood in the colon." (ECF No. 14 ¶¶ 1, 2.) Immunostics is a New Jersey corporation with its principal place of business in Ocean County, New Jersey and is in the business of distributing and selling similar medical devices. (*Id.* ¶¶ 3, 4.)

Since 2004, WHPM has manufactured and sold a medical device known as the Immunochemical Fecal Occult Blood Device (the "IFOB"), which is a device used to detect hemoglobin from stool samples. (*Id.* ¶ 8.) In 2004, WHPM obtained 501(k) clearance for its IFOB. (*Id.* ¶ 9.) 501(k) clearance is a certification awarded by the U.S. Food and Drug Administration ("FDA") which is required for those who manufacture medical devices pursuant to the Food, Drug, & Cosmetic Act (the "FDCA") and the Code of Federal Regulations under 21 U.S.C. § 510(k) (the "CFR" and collectively with the FDCA, the "510(k) Regulatory Scheme"). (*Id.* ¶ 12.) To obtain a 510(k) certificate, an applicant must obtain a letter from the FDA finding the device to be "substantially equivalent to a predicate device which provides permission for the device to manufactured and marketed in the U.S." (*Id.* ¶ 13.) Additionally, once one obtains a 510(k) certificate, that holder may license the right to manufacture that device to other manufacturers while continuing the holder's own manufacturing operations. (*Id.* ¶ 16.) Furthermore, the 510(k) holder may license the distribution rights to certified products under a "private label distribution agreement." (*Id.* ¶ 17.)

WHPM entered into a private label distribution agreement (the "Agreement") with Immunostics, whereby WPHM offered to manufacture and sell its IFOBs and Immunostics agreed

to: (1) purchase the IFOBs, (2) re-sell and distribute the IFOBs under its own private label, and (3) refrain from seeking its own 501(k) clearance based on WHPM's technology. (*Id.* ¶ 10.) The Agreement was executed by Dr. John Wan on behalf of WHPM and Tom Lane on behalf of Immunostics. (*Id.*) From 2005 to 2010, in accordance with the Agreement, Immunostics purchased large quantities of WHPM's IFOBs. (*Id.* ¶ 21.) Nevertheless, in 2006, Immunostics—without WHPM's knowledge or permission—submitted an independent 510(k) application for its own "hema-screen SPECIFIC" device based on WHPM's existing 510(k) clearance. (*Id.* ¶ 22.) However, WHPM claims Immunostics falsely represented to FDA that its hema-screen SPECIFIC device was substantially similar to WHPM's IFOB, despite Immunostics' device using different "suppliers, components, processes, and materials." (*Id.* ¶ 23.) Despite these misrepresentations, the FDA filed on order granting Immunostics 510(k) clearance based on a decision of substantial equivalence. (ECF No. 18-1 at 10.)

Therefore, Immunostics not only made false representations to the FDA in violation of the 510(k) Regulatory Scheme, but their application for its own 510(k) and use of WHPM's product in its application was a breach of the Agreement. (*Id.* ¶¶ 24-25.) As a result of this breach, WHPM suffered damages "in the form of lost sales, profits, and other damages in excess of $75,000 as a result of [Immunostics'] actions." (*Id.* ¶ 33.)

On November 9, 2018, WHPM filed its Complaint against Immunostics. (ECF No. 1.) Immunostics moved to dismiss the Complaint on March 13, 2019 (ECF No. 8), and in response WHPM filed its First Amended Complaint (the "Amended Complaint") asserting claims of breach of contract, tortious interference with a prospective economic advantage, and conversion. (ECF No. 14.) On May 14, 2019, Immunostics filed a Motion to Dismiss the Amended Complaint (ECF No. 18-1.) WHPM opposes the dismissal of Count One. (ECF No. 25.) The Motion to Dismiss

Counts Two and Three are unopposed.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-harmed-me accusation" must be pled; it

must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III. DECISION

#### A. Statute of Limitations

A federal court sitting in diversity applies the choice-of-law rules of the forum state—here, New Jersey—to determine the controlling law. *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 205 (3d Cir. 2013). New Jersey has adopted a two-part test. The first part of the inquiry is to

5

determine whether an actual conflict exists between the laws of the potential forums. *Maniscalco*, 709 F.3d at 206 (citing *Lebegern v. Forman*, 471 F.3d 424, 429-30 (3d Cir. 2006)); *P.V. v. Camp Jaycee*, 962 A.2d 453, 458-60 (N.J. 2008). The New Jersey Supreme Court specified the first step is evaluated "by examining the substance of the potentially applicable laws to determine whether 'there is distinction' between them . . . if not, there is no choice-of-law issue to be resolved." *Camp Jaycee*, 962 A.2d at 258. If a conflict does exist, the Court moves to the second part of the test to "determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207. Specifically, in breach of contract claims, the Court must determine which forum has the most significant relationship with both the parties and contract. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017); *See Jackson v. Midland Funding LLC*, 468 F. App'x 123, 126-27 (3d Cir. 2012); *Tobin v. Samsung Elecs. Am.*, No. 18-12473, 2019 U.S. Dist. LEXIS 52360 (D.N.J. Mar. 27, 2019).

The parties do not dispute there is a distinction between the statute of limitations rules of two potential forums—New Jersey and California. Under California law, the statute of limitations for breach of contracts claims is four years for written contracts, and two years for oral contracts. Cal. Com. Code § 2725; Cal. Code Civ. Proc. § 339. Under New Jersey law, there is also a four-year statute of limitations claims for breach of contracts governed by the U.C.C., but a six-year statute of limitations for claims for breach of other contracts. N.J. Stat. § 12A:2-725; N.J. Stat. § 2A:14-1. Because of this distinction, the Court must determine whether California or New Jersey has the most significant relationship to the claim. *See Maniscalco*, 709 F.3d at 207.

The New Jersey Supreme Court has adopted the principles set forth in Restatement (Second) of Conflicts of Laws, at Section 188 (respectively, "the Restatement" and "Section 188") to resolve choice of law issues. Section 188 provides that a Court should take into account: 1) the

place of contracting, 2) the place of negotiation of the contract, 3) the place of performance, 4) the location of the subject matter of the contract, and 5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188. Additionally, the Court should consider the more general factors set out in Section 6 of the Restatement: 1) the interests of interstate comity, 2) interests of the parties, 3) interest underlying the field of law, 4) interests of judicial administration, and 5) competing interests of the states. *Id.* § 6; *Camp Jaycee*, 962 A.2d at 463.

"A Court may grant a Rule 12(b)(6) motion based on statute of limitations grounds [only] if the complaint *on its face* shows noncompliance with the limitations period." *Viking Communs., Inc. v. AT&T Corp.*, No. 05-1078, 2005 U.S. Dist. LEXIS 24175 at *20 (D.N.J. Oct. 14, 2005) (emphasis added); *see also Brody v. Hankin*, 145 F. App'x 768, 771-72 (3d Cir. 2005) ("'If a statute of limitations' bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of a complaint under Rule 12(b)(6)." (quoting *Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (citation omitted))). WHPM has not provided any information about where the negotiations or the contracting took place, nor does it include the contract itself in the Complaint. Because of this, the Court "would have to view documents outside the complaint, including documents not mentioned in or attached to [WHPM]'s complaint, to determine whether California's or New Jersey's statute of limitation applies to this case." *Jackson v. Chevron Corp. Long-Term Disability Org.*, No. 05-3590, 2006 U.S. Dist. LEXIS 3590 at *13-14 (D.N.J. Jan. 30, 2006). Because noncompliance with the statute of limitations is not clear on the face of the complaint, and an analysis of choice of law requires the Court to examine documents outside the complaint, a choice of law review on this Motion to Dismiss is inappropriate. *Jackson*,

2006 U.S. Dist. LEXIS 3590. Accordingly, Immunostics' Motion to Dismiss Counts One, Two, and Three as time-barred are **DENIED.**

   **B. Breach of Contract**

   Immunostics contends WHPM cannot assert a breach of contract claim because they have failed to "sufficiently or plausibly establish the existence of any contract, let alone a breach of any contract." (ECF No. 18-1 at 23.)

   To plead a cause of action for a breach of contract, a plaintiff must allege, "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

   Immunostics first argues WHPM fails to satisfy the first requirement of its breach of contract claim because they have not "attach[ed] a written contract." (ECF No. 18-1 at 23.) However, at this stage, "the Federal Rules do not require the plaintiff to include the contract [with the complaint]." *Rehabcare Group East, Inc. v. Trenton Convalescent Operating Co.*, No. 06-2128, 2006 U.S. Dist. LEXIS 67376 at *2 (D.N.J. Sep. 20, 2006). Additionally, Immunostics contends WHPM's claim fails because they have not alleged whether the contract was written or oral, the identity of the parties, how the parties manifested consent, the identity of the parties, or if there was consideration. (ECF No. 18-1 at 23.) However, at this stage, that amount of detail is not required to survive a motion to dismiss. *See In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005) ("[A] plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts."). Indeed, the Complaint need only provide fair notice of the plaintiff's claim and the ground upon which it rests. *See Myers v. MedQuist, Inc.*, No. 05-4608, 2006 U.S. Dist. LEXIS 91904 (D.N.J. Dec. 20, 2006). Here, WHPM has adequately alleged the existence of a contract. WHPM

properly alleges when the contract was entered, the parties to the contract, the essential terms of the contract, how Immunostics breached the contract, and that WHPM fully performed their obligations under the contract. (ECF No. 14 at 6-7.) These allegations are sufficient to plead a breach of contract claim at this stage. Accordingly, Immunostics' Motion to Dismiss Count One of the Complaint is **DENIED.**

### C. Tortious Interference

Immunostics contends WHPM cannot assert a tortious interference claim because WHPM has not specifically alleged "the nature of Immunostics' supposed 'malicious' and 'inappropriate' interference." (ECF No. 18-1 at 28.) While WHPM does not oppose this claim, the Court must still address WHPM's claim on the merits. *See Jones v. Unemployment Comp. Bd. of Review*, 381 F. App'x. 187, 189 (3d Cir. 2010) (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) ("[A] Rule 12(b)(6) motion should not be granted without an analysis of the merits of the underlying complaint notwithstanding local rules regarding the granting of unopposed motions").

To survive a motion to dismiss, a tortious interference claim must provide: (1) "facts that show some protectable right—a prospective economic or contractual relationship"; (2) "facts claiming that interference was done intentionally and with malice"; (3) "facts leading to the conclusion that the interference caused the loss of the prospective gain"; and (4) that the inquiry caused the plaintiff damage. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (N.J. 1989); *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016).

Here, WHPM fails to identify any existing or prospective economic or contractual relationship with which Immunostics allegedly interfered. WHPM simply states there is a "reasonable likelihood that the interference caused the loss of a prospective commercial gain to [WHPM]." (ECF No. 14 at 8.) This allegation is insufficient to show the existence of a potential

business or economic interest WHPM lost or could have acquired but for Immunostics' conduct. *See American Millennium Ins. Co. v. First Keystone Risk Retention Group, Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009) (affirming dismissal of a tortious interference claim where plaintiff failed to identify a single, specific customer that was allegedly lost); *Decosta v. English*, No. 11-2651, 2012 U.S. Dist. LEXIS 20515 at *25 (D.N.J. Feb. 16, 2012) (dismissing plaintiff's "threadbare allegations" that did not show the existence of any potential clients or relationships with whom defendants interfered). Accordingly, Immunostics' Motion to Dismiss Count Two of the Complaint is **GRANTED.**

**D. Conversion**

Immunostics contends WHPM cannot assert a cause of action for conversion because WHPM has failed to "allege a cognizable property right that was allegedly converted," or, in the alternative, the claim is "subsumed within its breach of contract claim and barred by the economic loss doctrine." (ECF No. 18-1 at 32.) Again, while WHPM does not oppose this, the Court must still address the merits of WHPM's conversion claims. *See Jones*, 381 F. App'x. at 189.

Under New Jersey law, "[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *Peloro v. United States*, 488 F.3d 163, 173-74 (3d Cir. 2007) (quoting *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990) (citing *Mueller v. Tech. Devices Corp.*, 8 N.J. 201, 84 A.2d 620 (1951))). To state a claim for conversion, a plaintiff must show: (1) wrongful exercise of dominion or control over the property of another; (2) the taking of the property without authorization; and (3) that the taking was to the exclusion of the owner's rights to that property. *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753 (D.N.J. 2013) (citing *78th Infantry Div.,*

*World War II Living History Ass'n v. Oprendek*, No. 11-165, 2011 U.S. Dist. 140014 at *15-16 (D.N.J. Aug. 4, 2011)).

Here, WHPM alleges Immunostics—by seeking approval of a device based on WHPM's certification and entering an agreement with a third-party supplier— "wrongfully interfered with WHPM's ownership rights to WHPM's 510(k) certification and the underlying technology of the IFOB device." (ECF No. 14 at 9.) However, these allegations are insufficient to assert a claim of conversion. WHPM has not satisfied the third element because its allegations do not "allow for the inference that [WHPM's property] was taken to the exclusion of [their] right to it." *Lutsky v. Monomouth Marine Engines, Inc.*, No. 12-07554, 2013 U.S. Dist. LEXIS 72924 at * 13 (D.N.J. May 22, 2013). Because WHPM fails to satisfy the third element, the Court need not address the first two elements, and WHPM's conversion claim fails. Accordingly, Immunostics' Motion to Dismiss Count Three of the Complaint is **GRANTED.**

### IV. CONCLUSION

For the reasons set forth above, Immunostics' Motion to Dismiss is **GRANTED in part and DENIED in part.**

Date: January 22, 2020                     */s/ Brian R. Martinotti*
                                            **HON. BRIAN R. MARTINOTTI**
                                            **UNITED STATES DISTRICT JUDGE**